# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **XAVIER DOUTHARD,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:20-cv-1526-CLM** |
| ) | |
| **KILOLO KIJIKAZI,** ) | |
| **Acting Commissioner** ) | |
| **of the Social Security** ) | |
| **Administration,** ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Xavier Douthard seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Douthard's application in an opinion written by an Administrative Law Judge ("ALJ"). Douthard argues: (1) that the ALJ erred in finding that he can perform light work; (2) that the ALJ erred in finding that he can perform his past relevant work; and (3) that the ALJ's hypothetical question to the Vocational Expert was deficient.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.   **Statement of the Case**

   A.   **Douthard's Disability, as told to the ALJ**

Douthard was 43 years old at the time of the ALJ's decision. R. 23, 151. And Douthard's past relevant work includes jobs as a banquet server, manager, and store clerk. R. 175.

In his disability report, Douthard alleged that he had problems with high blood pressure, his cervical spine, his lower back, his right elbow, his right shoulder, his left knee, his left foot, numbness, headaches, and depression. R. 174. At the ALJ hearing, Douthard testified that he hasn't been able to work since he suffered injuries from a car accident. R. 36. According to Douthard, the car accident injured his cervical spine, which has caused numbness, stiffness, and daily pain. *Id.* And Douthard says his neck issue has limited his mobility and range of motion. R. 39. Douthard also says that he cannot consistently use his right arm. R. 42.

Douthard lives with his mother. R. 51. Though Douthard doesn't perform chores outside the house, he does help care for his own personal needs. *Id.* For example, Douthard can dress himself if he is wearing jogging pants and a t-shirt. R. 42. But since his accident, he's needed help folding a collar down and tying a tie. *Id.*

   B.   **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step and Step 4 are the most important steps here, as Douthard's challenge flows from the ALJ's decisions at these points in the evaluation process.

3

### C.   Douthard's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Douthard applied for disability insurance benefits and a period of disability in August 2018, claiming that he was unable to work because of various ailments, including hypertension, cervical spine pain, right elbow pain, and back pain. After receiving an initial denial December 2018, Douthard requested a hearing, which the ALJ conducted in November 2019. The ALJ ultimately issued an opinion denying Douthard's claims in December 2019. R. 12–23.

At Step 1, the ALJ determined that Douthard was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Douthard suffered from the following severe impairments: degenerative disc disease, cervical radiculopathy and spondylopathy, and right elbow osteoarthritis/avascular necrosis.

At Step 3, the ALJ found that none of Douthard's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Douthard's residual functional capacity.

The ALJ determined that Douthard had the residual functional capacity to perform light work with these added limitations:

- Douthard can lift and/or carry 20 pounds occasionally and 10 pounds frequently.

- Douthard can sit six out of eight hours and stand and walk six out of eight hours.

- Douthard should never climb ladders, ropes, or scaffolds.

- Douthard can frequently reach overhead.

- Douthard can perform jobs that do not require working with dangerous machinery or working at unprotected heights.

At Step 4, the ALJ found that Douthard could perform his past relevant work as a banquet steward and his composite job of sales representative (educational material) and tutor. So the ALJ found that Douthard was not disabled under the Social Security Act.

Douthard requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Douthard makes three arguments for why the ALJ erred in finding him not disabled. First, Douthard argues that the ALJ's residual functional capacity assessment lacks the support of substantial evidence, violates the requirements of SSR 96-8(p), and fails to point to a physical capacity evaluation by a treating or examining physician. Second, Douthard asserts that the ALJ erred in finding that he can perform his past work. Finally, Douthard contends that the ALJ erred in relying on the vocational expert's testimony because the ALJ's hypothetical question to the vocational expert didn't account for all of his impairments. The court will address each argument in turn.

### A.     Residual Functional Capacity Assessment

Douthard's argument that the ALJ's residual functional capacity assessment was deficient has three parts.

1. <u>Substantial evidence</u>: Douthard first argues that the ALJ's residual functional capacity assessment is conclusory and lacks the support of substantial evidence. But as shown below, the ALJ's residual functional capacity assessment is not conclusory. Nor does the ALJ's finding that Douthard could perform a range of light work lack the support of substantial evidence.

The SSA's regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 416.967. Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The ALJ supported her finding that Douthard could perform light work by pointing to Douthard's objective medical records/treatment history, Douthard's daily activities, and various medical opinions on Douthard's functional limitations.

As the ALJ noted, a car accident in October 2017 caused Douthard to suffer from neck pain, lumbar spine pain, right shoulder pain, right elbow pain, and tingling right fingers. R. 20, 241–44. But by November 2017, Quality of Life medical records noted that physical therapy relieved Douthard's symptoms and that he could

exercise. R. 625. And on physical examination, Douthard had only mild reduced range of motion in his lumbar and cervical spine. R. 628.

A month later, Dr. Sparks, from Sparks Orthopedics, diagnosed Douthard with osteoarthritis and avascular necrosis of the right elbow joint. R. 720. But February 2018 nerve conductions of Douthard's right upper extremity showed mainly normal findings. R. 722.

Because Douthard continued to complain of neck pain, he underwent cervical epidural injections in July 2018. R. 20. Two months later, Douthard was discharged from physical therapy. R. 543–44. The discharge summary notes that Douthard's activities of daily living were now only "moderately impaired." R. 543. The discharge summary also states that Douthard met the goals of being independent in postural correction and washing and dressing without complaints of pain and difficulty. R. 544.

As the ALJ also explained, Dr. Jonathan Fuller performed a consultative exam of Douthard in November 2018. R. 260–63. Douthard had loss of range of motion in his cervical spine. R. 260. But the rest of his range of motion showed no abnormalities. *Id.* Plus, Douthard had a normal gait, stated that he doesn't require a cane for ambulation, and denied having any difficulty with walking. *Id.* Though Dr. Fuller did find "[s]ome mild loss of upper extremity strength on right side when compared to left," he also found that Douthard's dexterity and grip strength were

normal. R. 260–61. Like Dr. Fuller's findings, Quality of Life medical records from 2019 report that Douthard had only mildly reduced range of motion in his cervical spine and shoulder, normal range of motion elsewhere, good handgrip, and normal sensory findings. R. 660, 667, 675. These records also reflect a conservative course of treatment that included continuing Douthard on prescription medication. *Id.*

As for Douthard's daily activities, the ALJ noted that though Douthard testified his pain was a 10/10 on the pain scale, he also stated that he stretches and does his own physical therapy each morning. R. 36, 52.

A reasonable person could look at this evidence and agree with the ALJ's finding that Douthard can perform light work with several added limitations. And Douthard cites no evidence that would compel the conclusion that Douthard had more severe limitations than those the ALJ assessed. Instead, Douthard asserts, without further elaboration, that "[t]he ALJ omitted any limitations caused by severe neck pain, shoulder pain, and elbow pain from the serious automobile accident on 10/6/17." Doc. 16 at 22. But the ALJ did accommodate the injuries caused by Douthard's car accident. For example, the ALJ limited Douthard to lifting/carrying 20 pounds only occasionally and lifting 10 pounds only frequently. R. 18. The ALJ also found that Douthard should never climb ladders, ropes, or scaffolds. *Id.* Finally, the ALJ limited Douthard to only frequently reaching overhead. *Id.*

Having reviewed the evidence, the court finds that the ALJ adequately accounted for all Douthard's functional limitations when assessing his residual functional capacity. In short, substantial evidence supports the ALJ's residual functional capacity assessment.

2. <u>SSR 96-8p</u>: Douthard also contends that the ALJ failed to discuss his ability to perform sustained work activities in an ordinary workday like the social security regulations require. An ALJ's residual functional capacity finding "must include a narrative discussion describing how the evidence supports the ALJ's conclusion, citing specific medical facts and nonmedical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *7 (11th Cir. July 12, 2021) (citing SSR 96-8p). The ALJ also needs to: (1) explain how she resolved "material inconsistencies or ambiguities" in the record, and (2) "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted." SSR 96-8p, 1996 WL 374184.

After reviewing the ALJ's hearing decision, the court finds that she complied with SSR 96-8p's requirements. The ALJ discussed in narrative form the record evidence and how she found this evidence to support her residual functional capacity assessment. R. 18–22. In this discussion, the ALJ cited specific medical facts, including Douthard's treatment notes, the results of Douthard's consultative exam,

and the opinions of several physicians. *Id.* The ALJ also discussed nonmedical evidence, such as Douthard's hearing testimony, Douthard's reported daily activities, and a function report from Douthard's mother. *Id.* The ALJ then found that Douthard retains the ability to work on a sustained basis and determined that her residual functional capacity "finding provides sufficient accommodations to not aggravate [his] symptoms and to allow him to engage in work activity on a sustained basis." R. 21–22.

And even when an ALJ could have been "more specific and explicit" in her findings about a claimant's functional limitations and work-related abilities, she satisfies SSR 96-8p by discussing the relevant evidence in the record and citing the regulations that define the exertional demands of the claimant's residual functional capacity. *See Casteel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007).

As explained above, the ALJ thoroughly discussed Douthard's medical records, evidence of Douthard's daily life activities, Douthard's hearing testimony, and the opinion evidence. R. 18–22. Plus, the ALJ cited the regulation that defines the exertional demands of light work. R. 18. So the ALJ satisfied the requirements of SSR 96-8p.

3. <u>Physical capacities evaluation</u>: Douthard's final argument for why the ALJ erred in assessing his residual functional capacity is that the ALJ needed to rely on

a physical capacities' evaluation by either an examining or treating physician to make this assessment. This argument fails. At the hearing level, the ALJ, not doctors, has the sole responsibility of assessing a claimant's residual functional capacity. 20 CFR § 404.1546(c). So while an ALJ must consider a medical source's opinion when assessing a claimant's residual functional capacity, the ALJ needn't base her residual functional capacity findings on a physician's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014).

\* \* \*

To sum up, the ALJ complied with the SSA's requirements for evaluating a claimant's residual functional capacity. And substantial evidence supports the ALJ's residual functional capacity assessment. So the court rejects Douthard's argument that the ALJ's residual functional capacity assessment was deficient.

### B.     Ability to Perform Past Work

Douthard makes two arguments for why the ALJ erred in finding that he could perform his past work as a banquet steward and composite job of sales representative (educational material) and tutor.

1. <u>Development of the record</u>: Douthard first argues that the ALJ did not adequately develop the record as to the physical and mental demands of his past work. During the ALJ hearing, Douthard testified that he had worked as a full banquet server for a hotel, "which pretty much provided the guests with full dining

service." R. 47. He then explained this job also required him to act as a bartender and clean up after the function. *Id.* Douthard also explained that he worked at Learned Systems as a field worker. R. 48. According to Douthard, this job required him to go sign children up for No Child Left Behind services and then tutor them in math and reading. R. 48–49.

After hearing Douthard's testimony, the vocational expert consulted the Dictionary of Occupational Titles ("DOT") and testified that Douthard's job of banquet steward was typically classified as light work but that Douthard performed the job at a medium exertion level. R. 61–62. The vocational expert then testified that the position at Learned Systems was a composite position of education courses sales representative and tutor. R. 62. According to the vocational expert, both the positions of educational courses sales representative and tutor involve only light work. *Id.* And when asked whether a hypothetical person with Douthard's residual functional capacity could perform Douthard's past work, the vocational expert stated that this person could perform: (1) the banquet steward job as generally performed and (2) the composite position at Learned Systems as Douthard performed it. R. 64. Relying on this testimony and the DOT, the ALJ found that Douthard could perform his past work as a sales representative (educational material) and tutor as performed and his work as a banquet steward as generally performed. R. 22–23.

The SSA's regulations authorize ALJs to consult the DOT and consider the testimony of vocational experts to determine whether a claimant can perform his past relevant work. *See* 20 CFR § 404.1560(b). And "it is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy." *See Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). So the vocational expert's testimony, which she partly based on Douthard's own description of his job duties, and the DOT provided substantial evidence to support the ALJ's finding that Douthard could perform his past work. Because the ALJ properly considered this evidence when comparing Douthard's residual functional capacity with the physical and mental demands of his past work, she didn't need to do more to develop the record.

2. <u>Evaluation of work capacity</u>: Douthard also seems to argue that the ALJ erred because his subjective pain testimony doesn't support the finding that he can perform his past relevant work. In support of this argument, Douthard cites *Smith v. Saul*, 2020 WL 91535 (N.D. Ala. Jan. 8, 2020), in which the court held that the ALJ erred in finding that the plaintiff could perform her past relevant work, not because the ALJ did not develop the record as to her past work, but because the ALJ improperly discredited her testimony.

An ALJ must apply the two-step "pain standard" to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first "present evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If he does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ found that Douthard's medically determinable impairments could reasonably be expected to cause his alleged symptoms. R. 19. But the ALJ determined that Douthard's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

As explained above, substantial evidence supports the ALJ's residual functional capacity finding. This same evidence also supports the ALJ's credibility determination. For example, after reviewing the medical records, the ALJ reasonably found that Douthard's prescription medications and physical therapy did a good job of controlling his impairments. R. 21. The ALJ also correctly noted that Douthard's testimony that he did stretches and physical therapy every day undermined his

testimony that his pain was a 10/10. *Id.* Plus, though Douthard stated that Dr. Smith recommended surgery after November 2018, the ALJ pointed out that Dr. Smith's November treatment notes state that Douthard's "objective MRI findings don't warrant any type of surgery in my opinion nor should his symptoms be so severe that he cannot work." R. 616. As the ALJ wasn't "clearly wrong to discredit" Douthard's subjective testimony, the court affirms her credibility determination. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

### C. Vocational Expert's Testimony

Douthard finally contends that the ALJ erred in relying on the vocational expert's testimony because the hypothetical question to the vocational expert wasn't based on a correct or full statement of his limitations and impairments. According to Douthard, the hypothetical question was deficient because it: (1) didn't accurately state his severe neck, shoulder, or elbow pain from his car accident, or (2) his residual functional capacity.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* at 1180. But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in her hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

The hypothetical question that the ALJ relied on to find that Douthard could perform his past work included all the limitations assessed in Douthard's residual functional capacity. And Douthard hasn't explained what functional limitations the ALJ should have added to her hypothetical question. Plus, the ALJ didn't need to include references to Douthard's diagnoses or impairments (such as neck or shoulder pain) in the hypothetical question. *See England v. Astrue*, 590 F.3d 1017, 1023 (8th Cir. 2007). So Douthard hasn't shown that the hypothetical question failed to accommodate his physical impairments.

The court also notes that in most of the cases Douthard cites the hypothetical question was deficient because it didn't provide accommodations for the claimant's mental impairments when the ALJ found at Step 2 that the claimant had moderate limitations in maintaining concentration, persistence, and pace. *See, e.g.*, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011). But here the ALJ found at Step 2 that Douthard's alleged depression and anxiety weren't medically determinable impairments, (R. 18), a finding that Douthard doesn't challenge on appeal. So the ALJ didn't have to consider Douthard's alleged mental impairments when fashioning her hypothetical question. *See* 20 CFR § 404.1545(a)(2) ("We will consider all of your ***medically determinable impairments*** . . . when we assess your residual functional capacity." (emphasis added)). And as explained above, substantial evidence supports the ALJ's finding that her residual functional capacity

17

assessment adequately accommodated Douthard's physical impairments. So the facts of the cases Douthard cites don't apply here. In short, the court sees no error in the ALJ's hypothetical question to the vocational expert.

## IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 27, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE